UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

FORD MOTOR CREDIT COMPANY,        :              03 Civ. 8423 (SHS)

                                 :

              Plaintiff,        :              OPINION & ORDER

                                 :

        -against-             :

                                 :

NEW YORK CITY POLICE DEPARTMENT,  :

PROPERTY CLERK, NEW YORK CITY      :

POLICE DEPARTMENT and CITY OF      :

NEW YORK,                       :

              Defendants.     :

------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Ford Motor Credit ("Ford Credit"), a lender to individual purchasers of motor vehicles, brings this action to challenge the legality of the New York City Police Department's procedures for retaining and disposing of seized automobiles. Claiming that it is routinely deprived of its property interests in liens it possesses on seized vehicles without due process of law, Ford Credit has moved for summary judgment. Defendants (the "City") have cross-moved for summary judgment, contending that their procedures satisfy relevant statutory and constitutional standards. The respective motions are each granted in part and denied in part, as certain elements of the City's procedures are legally or constitutionally infirm and others are not.

### Table of Contents

I. Background ............................................................................................................................2
   A. The Parties........................................................................................................................2
   B. The Property Clerk's Procedures......................................................................................3
   C. The Specific Vehicles at Issue .........................................................................................6
II. Analysis ..............................................................................................................................12
   A. Summary Judgment Standard.........................................................................................12
   B. Ford Credit's Due Process Claims..................................................................................13
   C. Ford Credit's Takings Claims are Unripe.......................................................................28
III. Conclusion.........................................................................................................................30

**I. Background**

This litigation represents yet another chapter in the decades-long legal saga relating to the procedures that the New York City Police Department ("NYPD") employs when seizing, retaining and disposing of vehicles. See, e.g., Property Clerk of the Police Dep't of the City of New York v. Harris, 7 Misc. 3d 1032(A), 2005 WL 1355148 (S. Ct. N.Y. Co. May 9, 2005); Property Clerk, New York City Police Dep't v. Aquino, 6 Misc. 3d 1031(A), 800 N.Y.S.2d 355, 2004 WL 3217800 (S. Ct. N.Y. Co. Nov 3, 2004); Jones v. Kelly, 378 F.3d 198 (2d Cir. 2004); Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002); Property Clerk, New York City Police Dep't v. Foley, 282 A.D.2d 221, 724 N.Y.S.2d 580 (1st Dep't 2001); Property Clerk, New York City Police Dep't v. Lee, 183 Misc. 2d 360, 702 N.Y.S.2d 792 (S. Ct. N.Y. Co. 2000); Alexandre v. Cortes, 140 F.3d 406 (2d Cir. 1998); Property Clerk of New York City Police Dep't v. Molomo, 81 N.Y.2d 936, 597 N.Y.S.2d 661, 613 N.E.2d 567 (1993); City of New York v. Salamon, 161 A.D.2d 470, 555 N.Y.S.2d 380 (1st Dep't 1990); Frank Santora Equip. Corp. v. City of New York, 138 Misc. 2d 631, 524 N.Y.S.2d 663 (S. Ct. N.Y. Co. 1988); McClendon v. Rosetti, 460 F.2d 111 (2d Cir. 1972). This latest installment calls upon the Court to review the impact of the NYPD's procedures on the security interests of lienholders.

**A. The Parties**

1. Ford Credit

Ford Credit lends money to purchasers of automobiles. It takes security interests in vehicles that are acquired with the funds it loans to debtors. Ford Credit operates under its own name, as well as under the names Primus Automotive Financial Services, Inc. and Mazda American Credit, Inc. (Pl.'s Local Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶ 1).[1]

---

[1] Ford Credit, Primus Automotive Financial Services, Inc. and Mazda American Credit, Inc. are referred to collectively in this opinion as Ford Credit.

2. The Property Clerk

The Property Clerk of the NYPD is empowered by section 14-140(b) of the New York City Administrative Code to maintain custody of "[a]ll property or money taken from the person or possession of a prisoner," as well as "all property or money suspected of having been used as a means of committing crime or employed in aid or furtherance of a crime."

**B. The Property Clerk's Procedures**

When NYPD officers seize a vehicle in connection with an arrest, they issue a voucher to the arrestee.  (See Decl. of Robert Messner in Supp. of Defs.' Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J. ("Messner Decl.") ¶ 6); see also 38 R.C.N.Y. § 12-32(a).[2]  The Property Clerk sends notice of the seizure to the titled owner, the registrant and any lienholder to inform them of the seizure.  (See Messner Decl. ¶ 6; Pl.'s 56.1 ¶ 20).  Within 120 days of the termination of a criminal proceeding related to the seized vehicle, a proper claimant may bring a demand to recover the vehicle.  (See Messner Decl. ¶ 7); see also 38 R.C.N.Y. § 12-35(c).[3]  The procedure for making a demand is contained on the back of the voucher provided to the arrestee and the back of the notice that the Property Clerk sends to the titled owner, registrant and lienholder.  (See Messner Decl. ¶ 7).

1. Claimed Vehicle

When a claimant makes a demand for a vehicle, the Property Clerk may either release the vehicle or institute forfeiture proceedings within twenty-five days of the claim.  See 38 R.C.N.Y. § 12-36; N.Y.C. Admin. Code § 14-140(e).  If the Property Clerk pursues forfeiture, it does not notify any lienholders and does not include lienholders as defendants in the relevant proceedings.  (See Pl.'s 56.1 ¶¶ 28-29).

---

[2] In addition, pursuant to the decision of the United States Court of Appeals for the Second Circuit in Krimstock v. Kelly, 306 F.3d 40 (2002), an arrestee is notified at the time of the seizure that a hearing will be scheduled with respect to the Property Clerk's retention of the vehicle. (Messner Decl. ¶ 6 n.2).  Notice of that hearing is also provided to the titled owner and registrant if different from the arrestee.  (See id.).

[3] If the vehicle is being held as evidence and a District Attorney's release is required for the vehicle to be turned over to the claimant, the time period for making a demand is extended to 270 days.  See 38 R.C.N.Y. § 12-35(d).

When forfeiture is successful, the Property Clerk may sell the forfeited vehicle. The Property Clerk publishes general notice of an auction sale date – that does not include any specific information regarding which vehicles are to be sold – in the City Record and on the Police Department's website. (See Pl.'s 56.1 ¶ 92; Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶¶ 29-31). A lienholder is not specifically notified in advance of a sale, nor provided information concerning the amount realized in the sale after the fact. (See Pl.'s 56.1 ¶ 113). Nevertheless, the lienholder's security interest is extinguished upon sale, as the purchaser takes the vehicle free and clear of any lien. (Id. ¶ 67; Defs.' Opp. to Pl.'s Statement Pursuant to Local Rule 56.1 ("Defs.' Opp.") ¶ 34).

The Property Clerk permits the lienholder on a vehicle whose lien has been extinguished to seek up to 90% of the proceeds of the sale of that vehicle in satisfaction of the related debt within one year of the sale by submitting an Auction Proceeds Claim Form, as well as an executed General Release with Indemnification Agreement, which broadly indemnifies the Property Clerk and the NYPD. (See Pl.'s 56.1 ¶¶ 115-16; Defs.' 56.1 ¶¶ 35, 40). The Property Clerk retains 10% of the auction proceeds purportedly to cover the administrative costs it incurs in storing and selling vehicles. (See Pl.'s 56.1 ¶¶ 110-13; Defs.' 56.1 ¶ 34).

2. Abandoned Vehicle

If no valid claim for a given vehicle is made, the Property Clerk deems the vehicle abandoned and sells it pursuant to section 14-140(e) of the New York City Administrative Code. (See Pl.'s 56.1 ¶ 66; Defs.' 56.1 ¶¶ 26, 28). No statutory provision obligates the Property Clerk to act within a specified time frame when disposing of abandoned vehicles. See N.Y.C. Admin Code § 14-140(e); N.Y. V.T.L. § 1224. When the Property Clerk sells abandoned vehicles, it permits lienholders – who are not afforded specific notice of the designation of the vehicle as abandoned or

of the resulting sale – to claim the proceeds pursuant to the same terms discussed above in the context of forfeitures.  (See Messner Decl. ¶ 16; Defs.' 56.1 ¶¶ 32-33).

3. Who is a Claimant?

The Property Clerk will only entertain a demand for a vehicle made by a valid claimant, i.e., "the person from whose person or possession property, other than contraband, was taken or obtained…." 38 R.C.N.Y. § 12-31.  According to the Property Clerk, "In the case of a vehicle seized by the Police Department because of the conduct of the operator of a vehicle who is not the titled or registered owner, this means that either the owner, or the operator from whom the vehicle was taken, may make a demand for the return of the vehicle." (Messner Decl. ¶ 8).  The Property Clerk refuses to recognize a lienholder as a valid claimant, because "[l]ienholders are not owners, and therefore not proper claimants." (Id. ¶ 9).  Pursuant to the Property Clerk's policy, a lienholder's demand for a vehicle will not trigger the commencement of forfeiture proceedings nor occasion release of the vehicle.  (See Pl.'s 56.1 ¶¶ 26-27; Defs.' Opp. ¶¶ 9-10).  A lienholder may, however, register a valid claim if it demonstrates that it has obtained either lawful title or permission to act on behalf of the titled owner.  (See Messner Decl. ¶ 9).  The Property Clerk will release a vehicle to a lienholder that has secured title only if the lienholder pays $1,000.00 to the Property Clerk, executes a release and agrees not to turn the vehicle over to the criminal defendant. (Id. ¶ 11).

The parties dispute whether New York law provides a mechanism whereby a lienholder can obtain title to a vehicle that secures a defaulted debt and that has been seized by the police.  The City has submitted evidence suggesting that some lienholders have brought declaratory judgment actions pursuant to New York Uniform Commercial Code section 9-619 and obtained orders transferring title.  (See Reply Decl. of Robert Messner in Further Supp. Of Defs.' Mot. For Summ. J. and in Further Opp. to Pl.'s Mot. for Summ. J. ("Messner Reply") ¶ 6).  Ford Credit's attorney

submitted a declaration that included the assertion that "[n]o … procedure exists in New York by which a lienholder can commence an action in a court for the purpose of divesting the owner of title." (Tillem Decl. in Further Supp. of Ford Credit's Mot. for Summ. J. and in Opp. to Defs.' Cross-Mot. for Summ. J. ("Tillem Decl. Further Supp.") ¶ 7).[4]

## C. The Specific Vehicles at Issue

The NYPD seized each of the vehicles at issue because of suspected illegal conduct in which the owner and/or operator had engaged. (Pl.'s 56.1 ¶ 16). Following the seizure of each vehicle, its owner or owners no longer made payments pursuant to the relevant installment contract. (Id. ¶ 18). The seizure of the vehicles and the cessation of payments constituted events of default pursuant to the relevant financing contracts. (Id. ¶ 19). The specific facts in the record relating to each vehicle are discussed below.

### 1. The Benn Vehicle

Pursuant to an assigned retail sales contract, Ford Credit has a security interest in Natasha V. Benn's 2000 Kia Sephia (the "Benn Vehicle"). (Pl.'s 56.1 ¶ 5). The NYPD seized the Benn Vehicle and the Office of the District Attorney of Richmond County issued a release for it on March 7, 2001. (Id. ¶ 30). On April 18, 2001, the Property Clerk brought a forfeiture action against Natasha Benn and Koby Mangin, the operator of the Benn Vehicle at the time it was seized. (Id. ¶ 31). Ford Credit was not a party to the forfeiture action, nor did it receive notice of the action, despite having made a demand for the vehicle on March 20, 2001. (Id. ¶ 32). The Property Clerk never obtained a judgment in the forfeiture action and released the Benn Vehicle to Benn on December 10, 2003. (Id. ¶¶ 33-34).

---

[4] The parties also dispute whether a lienholder can obtain a "repossession title" from the Department of Motor Vehicles. (See Messner Reply ¶¶ 7-9; Tillem Decl. Further Supp. ¶¶ 8-9).

2. Paskalov Vehicle

Pursuant to an assigned retail sales contract, Ford Credit has a security interest in Aleksandr Paskalov's 2000 Mazda MPV (the "Paskalov Vehicle"). (<u>Id.</u> ¶ 6). The NYPD seized the Paskalov Vehicle and the Property Clerk began forfeiture proceedings against Paskalov on March 2, 2001. (<u>Id.</u> ¶ 35). Ford Credit was not a party to the forfeiture action, nor was it given notice of the action, even though the Property Clerk had actual notice of Ford Credit's lienholder status. (<u>Id.</u> ¶ 36). The Property Clerk never obtained a judgment against Paskalov and notified him on January 5, 2004 that he could retake possession of his vehicle. (<u>Id.</u> ¶¶ 37-39).

3. Mueller Vehicle

Pursuant to an assigned retail sales contract, Ford Credit has a security interest in Diane C. Mueller's 2000 Hyundai Elantra (the "Mueller Vehicle"). (<u>Id.</u> ¶ 7). The NYPD seized the Mueller Vehicle and the Property Clerk began forfeiture proceedings against Mueller on April 16, 2001. (<u>Id.</u> ¶ 40). Ford Credit was not a party to the forfeiture action, nor was it given notice of the action, even though the Property Clerk had actual notice of Ford Credit's lienholder status. (<u>Id.</u> ¶ 41). The Property Clerk failed to realize a judgment against Mueller, and it authorized the release of the Mueller Vehicle to Mueller on January 7, 2004. (<u>Id.</u> ¶¶ 42-43).

4. Ryan Vehicle

Pursuant to an assigned retail sales contract, Ford had a security interest in Mindy and Michael Ryan's 2001 Hyundai Sonata (the "Ryan Vehicle"). (<u>Id.</u> ¶ 8). The NYPD seized the Ryan Vehicle and brought a forfeiture action in November of 2001 against Mr. Ryan. (<u>Id.</u> ¶ 44). Ford Credit was not a party to the forfeiture action, nor was it given notice of the action, even though the Property Clerk had actual notice of Ford Credit's lienholder status. (<u>Id.</u> ¶ 45). On July 1, 2003, while the forfeiture action was pending, Ryan surrendered the Ryan Vehicle's title to the NYPD. (<u>Id.</u> ¶ 47).

Without specifically notifying Ford Credit, the Property Clerk sold the Ryan Vehicle for $5,700 plus tax of $491.62 on August 19, 2003. (Id. ¶¶ 48, 90-91, 120). The only notice the Property Clerk provided of the sale was a general published announcement of the auction date. (Id. ¶ 92). The sale extinguished Ford Credit's lien. (Id. ¶¶ 94, 144). Pursuant to their contract with Ford Credit, the Ryans owe Ford Credit $17,083.32 secured by the Ryan Vehicle, but Ford Credit has not obtained any proceeds from the sale because it refuses to execute a general release and indemnification in favor of the NYPD. (Id. ¶¶ 121-23).

5. Zivkovic Vehicle

Pursuant to an assigned retail sales contract, Ford Credit has a security interest in Maksim Zivkovic's 1996 Mazda 626 (the "Zivkovic Vehicle"). (Id. ¶ 9). The NYPD seized the Zivkovic Vehicle and the Property Clerk began forfeiture proceedings against Zivkovic on October 5, 2000. (Id. ¶ 49). Ford Credit was not a party to the forfeiture action, nor was it given notice of the action, even though the Property Clerk had actual notice of Ford Credit's lienholder status. (Id. ¶ 50). The Property Clerk never obtained judgment against Zivkovic, and the forfeiture action is still pending. (Id. ¶¶ 51-52). Since the initial seizure, the Zivkovic Vehicle has depreciated in value by $5,500. (Id. ¶ 52).

6. Moreno Vehicle

Pursuant to an assigned retail sales contract, Ford Credit has a security interest in Maria and William Moreno's 2000 Nissan Pathfinder (the "Moreno Vehicle"). (Id. ¶ 10). The NYPD seized the Moreno Vehicle and Ford Credit made a demand for it on July 5, 2001. (Id. ¶ 76). The Queens County District Attorney issued a release for the Moreno Vehicle on February 2, 2002. (Id. ¶ 77). On December 29, 2003, the Property Clerk sent William Moreno a notice informing him that he had fifteen days to claim his vehicle or that it would be deemed abandoned. (Id. ¶ 78). Ford Credit

never received any similar notice.  (Id. ¶ 79).  As of January 27, 2004, the Property Clerk listed the Moreno Vehicle with the status "Auction."  (Id. ¶ 80).

7. Drisdle Vehicle

Pursuant to an assigned retail sales contract, Ford Credit has a security interest in Lee A. Drisdle III's 2000 Ford Explorer (the "Drisdle Vehicle").  (Id. ¶ 11).  The New York County District Attorney issued a release for the Drisdle Vehicle on February 14, 2002.  (Id. ¶ 68).  Ford Credit made a demand for the Drisdle Vehicle on March 6, 2002 and again on April 16, 2002.  (Id. ¶ 69).  The Property Clerk did not consider those demands valid, and the Drisdle Vehicle remains impounded, having depreciated by $5,425, or 39% of its value, since its seizure.  (Id. ¶¶ 70-71).

8. Park Vehicle

Pursuant to an assigned retail sales contract, Ford Credit has a security interest in Won Kil and Chang Jin Park's 1998 Kia Sportage (the "Park Vehicle").  (Id. ¶ 12).  The NYPD seized the Park Vehicle and Ford Credit made a demand for it on July 31, 2001.  (Id. ¶ 72).  The Property Clerk rejected the demand.  (Id. ¶ 73).  Then, on January 27, 2004, the Property Clerk released the vehicle to Yongil Jeong.  (Id. ¶ 74).  Following the release of the Park Vehicle, the Property Clerk notified Ford Credit that the vehicle was at the impound facility and that Ford Credit should contact the Property Clerk.  (Id. ¶ 75).

9. Linehan Vehicle

Pursuant to an assigned retail sales contract, Ford Credit had a security interest in Mortimer Linehan's 1997 Nissan Pathfinder (the "Linehan Vehicle").  (Id. ¶ 13).  The NYPD seized the Linehan Vehicle and the Property Clerk began forfeiture proceedings against Linehan on September 26, 2000.  (Id. ¶ 54).  Ford Credit was not a party to the forfeiture action, nor was it given notice of the action, even though the Property Clerk had actual notice of Ford Credit's lienholder status.  (Id. ¶ 55).  Linehan surrendered his vehicle's title to the Property Clerk while the forfeiture action was

pending and, without specifically notifying Ford Credit, the Property Clerk sold the Linehan Vehicle at auction on March 20, 2002 for $5,800.00 plus tax of $478.50.  (Id. ¶¶ 57-59, 95-97).

The sale extinguished Ford Credit's lien on the Linehan Vehicle.  (Id. ¶ 145).  Linehan owes Ford Credit $22,091.79 pursuant to the relevant financing contract, but Ford Credit has not obtained any proceeds from the sale as a result of its refusal to execute a general release and indemnification in favor of the NYPD.  (Id. ¶¶ 127-129).  Ford Credit has submitted a notice of claim against the City of New York, the Property Clerk and the NYPD to recover proceeds of the sale.  (Id. ¶ 131).

10. Rodriguez Vehicle

Pursuant to an assigned retail sales contract, Ford Credit had a security interest in Luis and Maria Felix Rodriguez's 1999 Dodge Caravan (the "Rodriguez Vehicle").  (Id. ¶ 14).  The NYPD seized the Rodriguez Vehicle and the Property Clerk began forfeiture proceedings against Luis Rodriguez on September 19, 2000.  (Id. ¶ 60).  Ford Credit was not a party to the forfeiture action, nor was it given notice of the action, even though the Property Clerk had actual notice of Ford Credit's lienholder status.  (Id. ¶ 61).  Despite the Property Clerk's failure to provide notice, Ford Credit learned of the proceedings and sought to intervene, but its motion was denied pursuant to Property Clerk v. Foley, 282 A.D. 2d 221, 724 N.Y.S. 580 (1st Dep't 2001).  (Pl.'s 56.1 ¶ 62).

On August 21, 2001, after obtaining judgment against Luis Rodriguez in the forfeiture proceedings, the Property Clerk sold the Rodriguez Vehicle for $5,500,00.  (Id. ¶¶ 63-64, 100, 132).  The Property Clerk did not provide Ford Credit any specific notice relating to the sale, either before or after its occurrence.  (Id.¶¶ 101-03).  Ford Credit's lien on the Rodriguez Vehicle was extinguished by the sale.  (Id. ¶¶ 105, 146).  Ford Credit is still owed $16,227.29 pursuant to the relevant financing contract, but it cannot obtain the proceeds of the sale, because it refuses to execute a general release and indemnification in favor of the NYPD.  (Id. ¶¶ 133-35).  Ford Credit

has submitted a notice of claim against the City of New York, the Property Clerk and the NYPD for proceeds of the sale. (Id. ¶ 137).

11. Walcott Vehicle

Pursuant to an assigned retail sales contract, Ford Credit had a security interest in Mitzie Walcott's 1997 BMW 523 (the "Walcott Vehicle"). (Id. ¶ 15). The NYPD seized the Walcott Vehicle and Ford Credit demanded its return on November 26, 1999. (Id. ¶ 81). The Property Clerk deemed Ford Credit's demand improper. (Id. ¶ 82). Ford Credit requested to know the time, date and location of the scheduled auction of the Walcott Vehicle. (Id. ¶ 84). By letter dated October 30, 2000, the Property Clerk disclaimed any plan to sell the Walcott Vehicle, because the owner had made a demand for it. (Id. ¶ 85). Nevertheless, approximately a month before responding to Ford Credit's inquiry, the Property Clerk had determined that it would sell the Walcott Vehicle, because the owner had failed to make a timely demand. (Id. ¶ 86). Despite having actual notice of Ford Credit's lienholder status, the Property Clerk failed to provide Ford Credit specific notice of the Property Clerk's intention to sell the Walcott Vehicle. (Id. ¶¶ 107-08). The Property Clerk sold the Walcott Vehicle on December 5, 2000 for $17,300.00, and the sale extinguished Ford Credit's lien. (Id. ¶¶ 87, 106, 109, 147). Ford is still owed $29,064.56 pursuant to the relevant financing contract, but the Property Clerk will not provide Ford any proceeds of the sale unless Ford executes a release and indemnification. (Id. ¶¶ 139-41). Ford Credit has submitted a notice of claim against the City of New York, the Property Clerk and the NYPD for proceeds of the sale. (Id. ¶ 143).

Ford Credit claims that following the initial seizure notice, it received no further communications from the Property Clerk regarding the Benn Vehicle, the Mueller Vehicle, the Drisdle Vehicle, the Ryan Vehicle, the Park Vehicle, the Linehan Vehicle and the Rodriguez Vehicle. (Id. ¶ 23). Ford Credit further maintains that it never received any notification whatsoever

of the seizure of the Paskalov Vehicle, the Zivkovic Vehicle, the Moreno Vehicle and the Walcott

Vehicle.  (Id. ¶ 24).  In addition, the NYPD has lost its files on the Mueller Vehicle, the Zivkovic

Vehicle, the Moreno Vehicle, the Park Vehicle and the Rodriguez Vehicle.  (Id. ¶ 17).

The parties agree that there are no genuine issues of material fact that would preclude the

Court from rendering summary judgment.  In addition to damages pursuant to 42 U.S.C. § 1983,

Ford requests that this Court declare the following:

> (i) Ford Credit is entitled to notice and an opportunity to be heard in any
> forfeiture action commenced by Defendants;  (ii) Ford Credit is a proper
> "claimant" for all purposes concerning the forfeiture of any vehicle in
> which Ford Credit maintains a security interest; (iii) the Property Clerk's
> policy and practice of taking ten (10) percent of Ford Credit's property
> interest is unlawful; (iv) Ford Credit is entitled to notice setting forth the
> time, date and location of the Property Clerk's auction of vehicles in
> which Ford Credit maintains a security interest and notice setting forth the
> outcome (i.e. the sale price) of the Property Clerk's auction of vehicles
> that Ford Credit retains a lien interest [in]; and (v) the Property Clerk is
> obligated to voluntarily and timely remit the entire auction sale proceeds
> to Ford Credit.

(Compl. ¶ 241).  Ford Credit, which brings claims pursuant to several provisions of the

federal Constitution – the Due Process Clause, the Takings Clause and the Excessive

Fines Clause – as well as the Rules of the City of New York, has now moved for

summary judgment.  The City has cross-moved for summary judgment.

## II. Analysis

## A. Summary Judgment Standard

Summary judgment is only appropriate when the evidence shows that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); see Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995); accord Celotex Corp. v. Catrett,

47 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The Court must "resolve all

ambiguities and draw all permissible factual inferences in favor of the party against whom summary

judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). The nonmoving party "may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence" supporting its version of events. Id. (quoting D'Amico v. City of New York, 132 F.3d 145, 148 (2d Cir. 1998)). Ultimately, in order to defeat a motion for summary judgment, the nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Golden Pacific Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)) (internal quotation marks omitted).

**B. Ford Credit's Due Process Claims**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. In order to allege a violation of due process rights, a plaintiff must establish that she has suffered a deprivation of a constitutionally protected liberty or property interest and that she was deprived of that interest without due process. See Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988); Rivera v. Cmty. Sch. Dist. Nine, 145 F. Supp. 2d 302, 306 (S.D.N.Y. 2001). Although federal law controls what process is due, property interests themselves "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)); see also Martz v. Incorporated Vill. of Valley Stream, 22 F.3d 26, 29-30 (2d Cir. 1994).

Upon determining that a party has been deprived of a cognizable property interest, a court must assess "'what process plaintiffs were due before they could be deprived of that interest.'" Kapps v. Wing, 404 F.3d 105, 118 (2d Cir. 2005) (quoting Sealed v. Sealed, 332 F.3d 51, 55 (2d

Cir. 2003)).  In gauging the constitutional adequacy of procedures, the familiar <u>Mathews v.</u>

<u>Eldridge</u>, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), balancing framework applies.  The

Court must balance the following factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an
> erroneous deprivation of such interest through the procedures used, and the
> probable value, if any, of additional or substitute procedural safeguards; and (3)
> the Government's interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural requirement
> would entail.

<u>Nat'l Org. for Women v. Pataki</u>, 261 F.3d 156, 167-68 (2d Cir. 2001) (quoting <u>Mathews</u>, 424 U.S. at

335) (quotation marks omitted).

The type of process due depends in part on whether the alleged violation was caused by

"established state procedures" or by "random, unauthorized acts by state employees."  <u>Hellenic</u>

<u>Am. Neighborhood Action Comm. v. City of New York</u>, 101 F.3d 877, 880 (2d Cir. 1996) (citing

<u>Hudson v. Palmer</u>, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) and <u>Parratt v.</u>

<u>Taylor</u>, 451 U.S. 527, 541, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)).  Specifically, when a state

employee intentionally deprives an individual of property or liberty through a random,

unauthorized act, the Due Process Clause of the Fourteenth Amendment is not violated "so long as

the state provides a meaningful postdeprivation remedy."  <u>Hellenic Am. Neighborhood Action</u>

<u>Comm.</u>, 101 F. 3d at 880.  However, when the state's deprivation of an individual's property or

liberty "occurs in the more structured environment of established state procedures," rather than

through random acts, "the availability of post deprivation procedures, will not, ipso facto, satisfy

due process."  <u>Id.</u>  In other words, "an adequate post-deprivation remedy is a defense to a Section

1983 due process claim only where the deprivation is random and unauthorized."  <u>Alexandre v.</u>

<u>Cortes</u>, 140 F.3d 406, 411 (2d Cir. 1998).

1. Notice and an Opportunity to be Heard in Connection with Forfeiture Proceedings

The City sold the Ryan, Linehan, Rodriguez and Walcott Vehicles pursuant to judgments of forfeiture. Ford Credit possessed a valid lien on each of those vehicles, but it was not notified of the forfeiture proceedings, nor provided an opportunity to be heard in connection with those proceedings. The forfeiture and sale of the vehicles extinguished Ford Credit's liens. Ford Credit maintains that it had a distinct property interest at stake in each of the forfeiture proceedings – its liens, which were ultimately extinguished – and that it consequently had a right to participate. Specifically, Ford Credit claims a right to receive notice and an opportunity to be heard that purportedly stems from two sources, section 12-36(b) of Title 38 of the Rules of the City of New York and the Due Process Clause of the Federal Constitution.

Section 12-36(b) of Title 38 of the Rules of the City of New York provides as follows:

> Notice of commencement of a forfeiture proceeding by the property clerk shall include a statement of the grounds upon which the property clerk seeks to justify the continued retention of the property. Any such proceeding shall provide the claimant and <u>any other interested persons</u> with an adequate opportunity to be heard within a reasonable period of time.

(emphasis added). The Property Clerk interprets the phrase "any other interested persons" to exclude lienholders on the relevant vehicles, but provides no support for that counterintuitive reading. If a forfeiture action is successful, the lienholder's security interest will be extinguished. If a forfeiture action is not successful, the lienholder's security interest may persist. Accordingly lienholders, such as Ford Credit, possess a substantial interest in the outcome of the forfeiture proceedings relating to the vehicles in which they hold security interests.

The potential extinguishment of Ford Credit's liens renders it an "interested person" in forfeiture proceedings brought in connection with vehicles in which it holds security interests. Thus, Ford Credit is entitled to an opportunity to be heard in those forfeiture proceedings pursuant to 38 R.C.N.Y. section 12-36(b). The logical progression of the rule suggests that those who are

afforded an opportunity to be heard also merit notice, a conclusion that accords with common sense, as the opportunity to be heard has little value without notice of the pendency of proceedings. See Kapps v. Wing, 404 F.3d 105, 124 (2d Cir. 2005).

Only one New York case has interpreted section 12-36(b). In Property Clerk, New York City Police Department v. Lee, 183 Misc. 2d 360, 702 N.Y.S.2d 792 (2000), the Supreme Court, New York County considered whether a lienholder in similar circumstances to Ford Credit had a right to intervene in a forfeiture action pursuant to section 12-36(b) and N.Y. C.P.L.R. section 1012(a)(3). That court held that the lienholder "is a person interested in this forfeiture action because of the movant's security interest in the subject vehicle and the movant's superior right of possession therein over [the vehicle's owner], due to the latter's default." Id. at 362. This, the only case explicitly interpreting section 12-36(b), supports a common sense interpretation of the section, namely that Ford Credit is an "interested person" in a forfeiture action in which its lien is at stake.[5]

Considering Ford Credit an interested party in forfeiture proceedings not only accords with the intuitive meaning of section 12-36(b) and the relevant caselaw, but it also adheres to the canon of constitutional avoidance. The U.S. Supreme Court recently explained the canon as follows:

> [W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail – whether or not those constitutional problems pertain to the particular litigant before the Court.

Clark v. Martinez, --- U.S. ----, 125 S. Ct. 716, 724, 160 L. Ed. 2d 734 (Jan. 12, 2005). The canon "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them." Spector v. Norwegian Cruise Lines, Ltd., --- U.S. ----, 125 S. Ct. 2169, 2183, --- L.

---

[5] In a subsequent case, Property Clerk, New York City Police Department v. Foley, 282 A.D.2d 221, 724 N.Y.S.2d 580 (2001), the Appellate Division, First Department, determined that a lienholder in circumstances similar to Ford Credit's did not have a right to intervene in a forfeiture proceeding, but that brief opinion referenced only N.Y. C.P.L.R. section 1012(a)(3) concerning intervention, not 38 R.C.N.Y. section 12-36(b).

Ed. 2d ---- (June 6, 2005) (quotation marks and citation omitted).  Here, the City's interpretation of section 12-36(b) raises "a multitude of constitutional problems," in light of its evident tension with the Due Process Clause of the Fourteenth Amendment.  Clark, 125 S. Ct. at 724.

Ordinarily, prior to depriving a person of a property interest, the government must provide "some kind of hearing."  DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (quotation marks and citation omitted).  It is well-settled that a lien is a constitutionally protectable property interest. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983); Armstrong v. United States, 364 U.S. 40, 46, 80 S. Ct. 1563, 4 L. Ed. 2d 1554 (1960); Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 594, 55 S. Ct. 854, 79 L. Ed. 2d 1593 (1935); United States v. Perry, 360 F.3d 519, 525 & n.4 (6th Cir. 2005); Shelden v. United States, 7 F.3d 1022, 1026 (Fed. Cir. 1993).  Furthermore, here, it is undisputed that a successful forfeiture results in a sale of a previously encumbered vehicle free and clear of the lienholder's lien.  The destruction of a cognizable property interest without due process of law violates the Due Process Clause.  See United States v. James Daniel Good Real Prop., 510 U.S. 43, 48, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993); Logan v. Zimmerman Brush Co., 455 U.S. 422, 434, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); see also Nat'l Org. for Women v. Pataki, 261 F.3d 156, 169-70 (2d Cir. 2001).  The extinguishment of Ford Credit's liens without any meaningful procedural accommodations amounts to a violation of Ford Credit's due process rights.  See Sams v. City of Milwaukee, Wis., 117 F.3d 991, 993 (7th Cir. 1997) ("Because Sam's vehicle lien was a protected property interest, the City could not deprive him of this property interest without due process of law") (citation omitted); Dutch Point Credit Union, Inc. v. Caron Auto Works, Inc., 36 Conn. App. 123, 130-31, 648 A.2d 882 (1994) (applying the due process clause to protect the property interests of lienholders in vehicles deemed abandoned by state authorities and sold free and clear of all liens); see also In re Metmor Fin., Inc., 819 F.2d 446, 451 (4th Cir. 1987).

The City concedes that Ford Credit's liens are, indeed, protectable property interests, but nevertheless insists that Ford has nothing at stake in the forfeiture proceedings, i.e., that Ford Credit is not being deprived of any property interest because in the event that one of its liens is extinguished, Ford Credit may seek a remedy, namely up to 90% of the proceeds of the sale of the vehicle. Even assuming _arguendo_ that the remedy provides Ford Credit adequate compensation, Ford Credit is still sufficiently interested in the outcome of the forfeiture proceedings to be entitled to notice and an opportunity to be heard. The ultimate availability of a post-deprivation remedy does not eliminate the depriving character of the seizure for Due Process Clause purposes when, as here, the seizure has occurred pursuant to established government procedures. See Hellenic Am. Neighborhood Action Comm., 101 F. 3d at 880; Alexandre, 140 F.3d at 411; Kraebel v. New York City Dept. of Hous. Pres. and Dev., 959 F.2d 395, 404 (2d Cir. 1992).

The City also contends that Ford Credit can adequately protect its interests by instituting a judicial proceeding to obtain title to a seized vehicle and thereby acquiring the right to be a defendant in the relevant forfeiture proceedings. The parties dispute whether such a judicial mechanism is available in New York courts. Regardless, the City cannot escape its constitutional obligations by depriving Ford Credit of due process unless Ford Credit transforms its already constitutionally protectable property interest – its lien – into another type of constitutionally protectable property interest – title. See Sterling v. Envtl. Control Bd. of City of New York, 793 F.2d 52, 57 (2d Cir. 1986) (commenting that "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation") (quoting Mennonite Bd., 462 U.S. at 799).

The Court has interpreted 38 R.C.N.Y. section 12-36(b) in accordance with its plain meaning – i.e., that a lienholder is an "interested person" entitled to notice of a forfeiture proceeding and an opportunity to be heard – which avoids the significant due process problems that the Property

Clerk's interpretation causes.[6]  Ford Credit must be given notice and an opportunity to be heard in connection with forfeiture proceedings relating to vehicles in which it holds a security interest.

2. Failure to Recognize Ford as a Claimant

The Property Clerk only recognizes a demand for a vehicle made by a proper claimant, defined in 38 R.C.N.Y. section 12-31 as "the person from whose person or possession property, other than contraband, was taken or obtained…."  The Property Clerk understands that definition to include the owner of a vehicle and the operator at the time the vehicle was seized, but not any lienholder.  Ford Credit claims that the Due Process Clause requires that it be considered "a proper 'claimant' for all purposes concerning the forfeiture of any vehicle in which Ford Credit maintains a security interest[.]"  (Compl. ¶ 241).  Ford Credit contends that unless considered a claimant, it cannot protect its interest in any given vehicle if the Property Clerk fails to commence forfeiture proceedings in a timely fashion when no recognized claimant has made a demand for a vehicle.  The City urges that Ford Credit is not being deprived of a lien when the City delays in bringing forfeiture proceedings.

The Property Clerk's refusal to recognize lienholders as claimants has significant economic consequences for Ford Credit.  For example, on February 14, 2002, Ford Credit made a demand for the Drisdle Vehicle that the Property Clerk refused to recognize.  (Pl.'s 56.1 ¶ 68).  The City had

---

[6] The Supreme Court's holding in <u>Bennis v. Michigan</u>, 516 U.S. 442, 116 S. Ct. 994, 134 L. Ed. 2d 68 (1996), supports the inference of significant due process concerns resulting from the City's interpretation of 38 R.C.N.Y. section 12-36(b).  In <u>Bennis</u>, the Supreme Court held that Michigan's nuisance abatement statute did not violate the Due Process Clause despite its absence of an explicit innocent owner defense.  <u>Id.</u>  The petitioner in <u>Bennis</u>, Mrs. Bennis, had jointly owned an automobile with her husband, Mr. Bennis.  <u>Id.</u> at 443.  After Mr. Bennis engaged in sexual activity with a prostitute in the vehicle, Michigan sued both Mr. and Mrs. Bennis and the state obtained a judgment that did not provide an offset for Mrs. Bennis' interest in the vehicle, despite her ignorance of Mr. Bennis' activities.  <u>Id.</u> at 443-44.  The Supreme Court held that the absence of a statutory innocent owner defense did not violate the Due Process or Takings Clauses of the U.S. Constitution.  <u>See id.</u>  "[T]he Court in <u>Bennis</u> suggested that the apparent unfairness of the Michigan law was mitigated by the trial court's 'remedial discretion' to consider whether forfeiture of a vehicle would leave its owner or owners without transportation and to order payment to one-half of any sale proceeds to an innocent co-owner."  <u>Krimstock v. Kelly</u>, 306 F.3d 40, 56 n.15 (2d Cir. 2002) (citing <u>Bennis</u>, 516 U.S. at 444-45).  In other words, a key to the avoidance of a violation of the Due Process Clause in <u>Bennis</u> was Mrs. Bennis' ability to appeal to the trial court's discretion.  Here, Ford Credit, arguably an innocent lienholder, has not been given any opportunity to be heard before its property interests were eliminated.  Nothing in the Due Process Clause permits an innocent owner's interest in property to be forfeited without the provision of any process to the innocent owner.

neither commenced forfeiture proceedings nor sold the vehicle as abandoned by July 22, 2004. (Id. ¶¶ 69-71). During that time, the Drisdle Vehicle depreciated by $5,425, losing 39% of its value. (Id. ¶ 71). In other instances, the Property Clerk held vehicles for extended periods of time without instituting forfeiture proceedings or selling vehicles as abandoned: the Moreno vehicle was held for at least two years following the issuance of a district attorney's release and was listed with the unclear status of "auction"; the Park Vehicle was held for almost two and one half years until released to an authorized party; the Walcott Vehicle was held for approximately ten months until it was sold as abandoned.[7]

The Due Process Clause "requires the Government to commence a forfeiture action within a reasonable time of seizure." United States v. Banco Cafetero Panama, 797 F.2d 1154, 1163 (2d Cir. 1986). In assessing reasonableness, courts look to the four-factor test set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), with respect to assessing whether trials are adequately speedy. Specifically, courts review "the length of the delay, the reason for the delay, the claimant's assertion of his right to a prompt adjudication and prejudice to the claimant." Banco Cafetero Panama, 797 F.2d at 1163; see also United States v. David, 131 F.3d 55, 59 (2d Cir. 1997).

Here, the City has caused substantial delays in the institution of forfeiture proceedings. During these periods of delay, Ford Credit's right as a lienholder to repossess vehicles securing delinquent debts has been suspended. See Property Clerk of the New York City Police Dep't v. Molomo, 81 N.Y.2d 936, 938, 597 N.Y.S.2d 661, 613 N.E.2d 567 (1993). Moreover, as a result of the concomitant depreciation of the vehicles, the City's delays cause significant financial harm to the value of Ford Credit's liens. Nevertheless, the City contends that because Ford Credit lacks a

_____

[7] Section 12-19 in Title 38, entitled "Vehicles Being Claimed by Lienholder" provides that "[l]ienhoders must present a copy of sales agreement which was signed by owner and a notarized statement on company letterhead stating said person is in arrears in payment." The parties agree that section 12-19 only applies to vehicles that have not been seized in connection with an arrest, and so it is not relevant to the vehicles at issue here.

"present possessory right" to vehicles that have been lawfully seized, Molomo, 81 N.Y.2d at 938, Ford Credit has no cognizable property interest in those vehicles at all. That reasoning plainly ignores that Ford Credit has a protectable – albeit at the time of seizure and retention intangible – property interest in the relevant vehicles. See Tulsa Professional Collection Servs., Inc. v. Pope, 485 U.S. 478, 485, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988) ("Little doubt remains that [ ] an intangible interest is property protected by the Fourteenth Amendment"); Burtnieks v. City of New York, 716 F.2d 982, 984, 986 (2d Cir. 1983) (the destruction of property in which plaintiff had a reversionary interest constitutes a deprivation of plaintiff's property without due process).

When no recognized claimant has made a demand for a given vehicle, the City deems the vehicle abandoned and disposes with it at will, delaying substantially in some cases. The vehicles at issue were not, however, genuinely abandoned, because an interestholder – Ford Credit – had asserted its rights. The City cannot escape constitutional limitations on its ability to delay the institution of forfeiture proceedings by simply labeling vehicles abandoned. See McKee v. Heggy, 703 F.2d 479, 482 (10th Cir. 1983) ("A state's ability to dispose of abandoned property does not enable its law enforcement officers to take a citizen's property and dispose of it as they see fit simply by labeling it 'abandoned'"). The City has proffered no constitutionally satisfactory explanation for its refusal to recognize lienholders' interests in the relevant vehicles or its delays in instituting forfeiture proceedings.

In light of the City's failure of explanation, its substantial delays are unreasonable and violative of the Due Process Clause. See May v. United States, 519 F. Supp. 649, 653 (S.D. Ohio 1981); United States v. Eight (8) Rhodesian Stone Statutes, 449 F. Supp. 193, 204-05 (C.D. Cal. 1979).

Due process is a flexible concept that varies with the relevant circumstances. See Connecticut v. Doehr, 501 U.S. 1, 10, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991); Zinermon v. Burch,

494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). Nonetheless, despite Ford Credit's requested relief, there is no constitutional requirement that the City recognize Ford Credit as a valid claimant for all purposes pursuant to 38 R.C.N.Y. section 12-35(a). Rather, the City has a constitutional obligation to institute forfeiture proceedings within a reasonable time when an interested party, such as a lienholder like Ford Credit, seeks a disposition with respect to a vehicle in which it holds a cognizable property interest.

3. Notice of the Occurrence of a Sale

Ford Credit maintains that it is entitled to receive personal notice following the sale of a vehicle in which it holds a security interest. The City responds that it is not obligated to provide Ford Credit any individualized, post-sale notice and that the notice published in the City Record that announces the dates of upcoming auctions – but that lacks information relating to which vehicles will be sold – is sufficient. The Due Process Clause requires that the City provide Ford Credit notice "reasonably certain to inform" Ford Credit of the essential information relating to vehicle sales that have occurred such that Ford Credit may protect its constitutionally cognizable property interests in the recoupment of the proceeds of the sales. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

Pursuant to the Court of Appeals' decision in Property Clerk of New York City Police Dept. v. Molomo, 81 N.Y. 2d 936 (1993), a lienholder has an entitlement to collect the proceeds of the Property Clerk's sale of a vehicle in which the lienholder possessed a security interest. The right to secure the proceeds amounts to a constitutionally protectable property interest because it derives from a "legitimate claim of entitlement," Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), based on "fixed eligibility criteria," see Kapps v. Wing, 404 F.3d 105, 114 (2d Cir. 2005), that entitle Ford Credit to those proceeds.

Lienholders are given one year from the date of sale to claim the proceeds. For that opportunity to be meaningful, a lienholder must have actual notice of the fact that a sale has occurred and the amount that the Property Clerk realized. Published notice of impending sale dates in the City Record is unlikely to be effective in enabling lienholders to protect their interests before their rights to recoup sale proceeds expire. See Tulsa Professional Collection Servs., Inc. v. Pope, 485 U.S. 478, 489, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988). The Due Process Clause requires that notice "reasonably certain to inform those affected," Mullane, 339 U.S. at 315, be provided. "In the absence of effective notice, the other due process rights … are rendered fundamentally hollow." Kapps, 404 F.3d at 124.

The Mathews v. Eldridge factors counsel in favor of requiring the City to provide Ford Credit actual notice of the occurrence of a sale of a vehicle in which Ford Credit holds a security interest. See 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Ford Credit has a significant private interest at stake. Absent actual notice, Ford Credit may be deprived of its interest erroneously, as it may be unaware of its right to petition for proceeds to which it is entitled. The incremental administrative burden on the City of providing actual notice is minimal, particularly given that the City already informs lienholders when vehicles are initially seized and given the City's additional obligations discussed above. A mailing containing limited information that is readily at the Property Clerk's disposal should not be particularly onerous to the City.

The Due Process Clause requires that the City provide Ford Credit post-sale notice within a reasonable time following the sale of a vehicle in which Ford Credit held a security interest. That notice must inform Ford Credit the specific vehicle that has been sold, on what date and how much was realized in the sale.

4. Practices Relating to Auction Proceeds

According to Ford Credit, the Property Clerk has refused to turn over the proceeds of sales of vehicles in which Ford Credit held a security interest, thereby impermissibly interfering with Ford Credit's right to receive those proceeds. The Property Clerk retains 10% of the sale price as an "administrative fee." Moreover, the Property Clerk refuses to remit the proceeds unless Ford Credit executes a broad release and indemnification in favor of the City. Ford Credit contends that these procedures amount to an excessive fine in contravention of the Eighth Amendment and a violation of the substantive due process doctrine pursuant to the Fourteenth Amendment. The City responds that prior litigation in Property Clerk of New York City Police Dept. v. Molomo precludes Ford Credit's claims with respect to the 10% deduction. Furthermore, the City urges that the 10% deduction and required release and indemnification are appropriate mechanisms to protect the City from incurring unwarranted costs. Although not barred from pursuing these arguments by the doctrine of collateral estoppel, Ford Credit has failed to demonstrate that the City's procedures constitute an excessive fine or a violation of Ford Credit's substantive due process rights.

a. Collateral Estoppel

The City maintains that Ford Credit has already litigated the 10% deduction and is therefore foreclosed from addressing it here pursuant to the doctrine of collateral estoppel, also known as issue preclusion.[8] The City argues that "the issue of the constitutionality of the 10% administrative fee was presented by Ford to the Appellate Division, First Department in Molomo … and rejected." (Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. and in Supp. of Defs.' Cross-Mot. for Summ. J. at 23); see Property Clerk, New York City Police Dep't v. Molomo, 179 A.D.2d 210, 583 N.Y.S.2d

---

[8] The City styles this argument as one made pursuant to the doctrine of res judicata, a term that sometimes sweepingly refers to both claim preclusion and collateral estoppel (issue preclusion). See 18 Moore's Federal Practice § 132.01. The City's argument is properly addressed pursuant to the doctrine of collateral estoppel because the City does not contend that the specific cause of action that Ford asserts has already been litigated. See id. Rather, the City maintains that the 10% deduction issue has already been determined in the context of another litigation.

251 (1st Dep't 1992).  Ford Credit contends that it may raise the legality of the 10% deduction because the issue was not fully litigated in <u>Molomo</u>.

"To afford a state court's judgment full faith and credit, we are required to apply the state's principles of collateral estoppel."  <u>Galvak v. Town of Somers</u>, 267 F. Supp. 2d 214, 227 (D. Conn. 2003) (citing <u>Curry v. City of Syracuse</u>, 316 F.3d 324, 331 n.4 (2d Cir. 2003) and <u>Town of Deerfield v. FCC</u>, 992 F.2d 420, 429 (2d Cir. 1993)).  In <u>Curry v. City of Syracuse</u>, the U.S. Court of Appeals for the Second Circuit characterized New York's law of collateral estoppel as follows: "[u]nder New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication."  316 F.3d at 331.  The Court went on to explain that "[i]t may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate."  <u>Id.</u>  "'Additionally, the issue that was raised previously must be decisive of the present action.'"  <u>Id.</u> (quoting <u>LaFleur v. Whitman</u>, 300 F.3d 256, 271 (2d Cir. 2002)) (internal citation and quotation marks omitted)).

In <u>Molomo</u>, Ford Credit sought replevin of vehicles seized by the Property Clerk.  In its briefing, Ford mentioned in passing the 10% deduction of sale proceeds.  (<u>See</u> Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. and in Supp. of Defs.' Cross-Mot. for Summ. J. at 24).  Although the Appellate Division noted the existence of the 10% deduction in its opinion, it never expressly ruled on whether it was legally permissible.  <u>See</u> <u>Molomo</u>, 179 A.D. 2d at 212, 214.  In its opinion on the appeal from that decision, the New York Court of Appeals never mentioned the 10% issue at all.  <u>See</u> <u>Molomo</u>, 81 N.Y. 2d 936.  Neither of these courts reached the issue of the legality of the 10% deduction and the Appellate Division's dictum regarding the deduction's existence cannot be treated as a preclusive determination on the merits for purposes of collateral estoppel.  <u>See</u> <u>Generale Bank, New York Branch v. Wassel</u>, No. 91 Civ. 1768, 1993 WL 106051, at *2 (S.D.N.Y. Apr. 8, 1993).  Therefore, Ford Credit is not precluded from raising the legality of the 10% deduction in this action.

b. Substantive Due Process

Ford Credit contends that the 10% deduction and the release and indemnification requirement violate the substantive component of the Due Process Clause. The City maintains that its procedures are reasonable means of offsetting the cost and exposure to liability that it incurs in retaining and disposing of seized vehicles. As the City's procedures do not rise to the level of a conscience-shocking abuse of government authority, they are not violative of the doctrine of substantive due process.

"The Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." Bryant v. City of New York, 404 F.3d 128, 135 (2d Cir. 2005) (citations, quotation marks and brackets omitted). The Clause aims to insulate the individual from "'arbitrary action of government.'" Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). The doctrine of substantive due process prohibits government from depriving individuals of liberty or property interests in a manner that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised." Catanzaro v. Weiden, 188 F.3d 56, 64 (2d Cir. 1999) (citation and quotation marks omitted); see also Natale v. Town of Ridgefield, 170 F.3d 258, 259 (2d Cir. 1999) (substantive due process prohibits conduct that is "so outrageously arbitrary as to constitute a gross abuse of governmental authority").

The City's actions do not rise to the "'conscience-shocking level' that would be necessary to support a claim of denial of substantive due process." Bryant, 404 F.3d at 135 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). The City expends resources and exposes itself to potential liability when conducting auction sales. It retains a percentage of the sales price to cover overhead and demands a release and indemnification to insulate itself from liability. Regardless of whether or not these procedures are permissible pursuant

to other constitutional provisions, they do not exhibit the type of arbitrary abuse of government authority that would subject the City to liability stemming from the substantive due process clause. See Natale, 170 F.3d at 263.[9]

c. Excessive Fines

Ford Credit maintains that the 10% deduction amounts to an unconstitutionally excessive fine. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed …." U.S. Const. amend. VIII. The Supreme Court has interpreted the Excessive Fines Clause to "limit[] the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" Austin v. United States, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993) (emphasis deleted and citation omitted). Forfeitures are considered fines if they "constitute punishment for an offense." United States v. Bajakajian, 524 U.S. 321, 328, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). If punitive, a forfeiture may only be in an amount that bears "some relationship to the gravity of the offense that it is designed to punish." Id. at 334 (citing Austin, 509 U.S. at 622-23, and Alexander v. United States, 509 U.S. 544, 559, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993)). A punitive forfeiture may not be "grossly disproportional to the gravity of the defendant's offense." Id.

Here the Court need not gauge the proportionality of the 10% deduction, because it is plainly not punitive and therefore not subject to Eighth Amendment analysis. Cf. id. at 328-29 & n. 4. The deduction itself is remedial, as it is imposed to compensate the City for administrative expenses incurred in the disposition of the vehicles. See id. (citing One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S. Ct. 489, 34 L. Ed. 2d 438 (1972) (per curiam)). The deduction is applied

_____

[9] In any event, when another provision of the Constitution contains a more explicit protection against a particular type of government conduct, that provision applies and not the "more generalized notion of substantive due process." Bryant, 404 F.3d at 135 (citations and quotation marks omitted). Here, the Takings Clause provides a more specifically applicable constitutional framework than the doctrine of substantive due processes. Accordingly, Ford Credit may not properly invoke the doctrine of substantive due process to advance what is essentially a takings claim for the City's failure to remit specific funds to which Ford Credit claims it was entitled. Id.

universally, regardless of whether any given lienholder had responsibility for the allegedly illicit activity that occasioned the forfeiture.  Cf. Austin, 509 U.S. at 619.  Because plaintiff has failed to set forth any evidence suggesting that the 10% deduction is punitive in nature, it is not susceptible to Eighth Amendment analysis.  See United States v. An Antique Platter of Gold, 184 F.3d 131, 140 (2d Cir. 1999) (noting that nonpunitive forfeitures are "outside the scope of the Excessive Fines Clause").

**C. Ford Credit's Takings Claims are Unripe**

Ford Credit has advanced several of its claims pursuant to the Takings Clause of the Fifth Amendment.  The Takings Clause, which applies to the states through the Fourteenth Amendment, see Phillips v. Wash. Legal Found., 524 U.S. 156, 163-64, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998), commands that "private property" shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  Ford Credit claims that the Takings Clause is violated by the Property Clerk's: 1) refusal to recognize lienholders as claimants for seized vehicles in which the lienholders possess security interests; 2) retention of 10% of the proceeds from the sales of seized vehicles when lienholders exercise their rights to recover those proceeds; and 3) requirement that lienholders provide releases and indemnifications to recover proceeds from those sales.

The Court need not address any of Ford Credit's takings claims, as they are unripe for review.  See Vandor v. Militello, 301 F.3d 37, 38 (2d Cir. 2002) (noting that in connection with a takings claim, "[w]e are obliged to consider the ripeness question before reaching the merits of … claims because ripeness is jurisdictional….").  "A takings claim is unripe where 'a remedy potentially is available under the state constitution's provision.'"  Id. (quoting Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 380 (2d Cir. 1995)).  Ford Credit has failed to demonstrate that it lacks a "potential avenue for state court relief."  Id. at 39.

The doctrine of ripeness stems from the requirement in Article III of the Constitution that federal courts hear only cases or controversies. See Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). Claims must be reviewed for ripeness "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements…." Abbot Labs. v. Gardner, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).

In Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), the Supreme Court applied a two-part ripeness inquiry in a takings claim. The Court first explained that a takings claim is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id. at 186. The second prong of the Williamson ripeness inquiry involves a determination of whether the claimant has sought "compensation through the procedures that State ha[d] provided for doing so." Id. at 194; see also San Remo Hotel, L.P. v. City and County of San Francisco, --- U.S. ----, 125 S. Ct. 2491, 2507-10, 162 L. Ed. 2d 315 (June 20, 2005) (Rehnquist, J. concurring). "Under the second prong of Williamson County a property owner must seek compensation for an alleged taking before proceeding to federal court." Murphy, 402 F.3d at 349. In Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, the Second Circuit explained that a plaintiff has not suffered a taking until it has sought compensation through an available state procedure, even if the only available procedure is one that "'remains unsure and undeveloped.'" Id. at 380 (quoting Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 99 (2d Cir. 1992)).

Here, regardless of whether Ford Credit has satisfied the first prong of the Williamson test, it has plainly failed to satisfy the second prong, namely the requirement that it seek compensation for the purported takings. Nothing in the record suggests that Ford Credit has sought compensation in

the state court system for the alleged takings. Ford Credit has submitted notices of claim with respect to certain vehicles, but there is no indication that Ford Credit has pursued potential state remedies further. Therefore, Ford Credit's claims pursuant to the Takings Clause are unripe.

## III. Conclusion

As set forth above, certain elements of the City's procedures relating to the retention and disposal of seized vehicles violate Ford Credit's rights pursuant to the Rules of the City of New York and the Due Process Clause of the Federal Constitution. Accordingly, given that there are no genuine issues of material fact and that Ford Credit is entitled to judgment as a matter of law with respect to particular claims, Ford Credit's motion for summary judgment is granted in part and the City's cross-motion for summary judgment is denied in part. Specifically, the Court declares that: (i) Ford Credit is entitled to notice and an opportunity to be heard in any forfeiture action commenced by the City concerning a vehicle in which Ford Credit holds a valid security interest; (ii) the City must commence a forfeiture action within a reasonable time upon a demand for a seized vehicle from Ford Credit when Ford Credit holds a valid security interest in that vehicle; and (iii) Ford Credit is entitled to actual notice following the City's sale of a vehicle in which Ford Credit holds a valid security interest, and that notice must set forth which vehicle was sold, the date of sale and amount realized. With respect to the other declarations Ford Credit seeks, its motion for summary judgment is denied in part, and the City's cross-motion for summary judgment is granted in part.

Dated: New York, New York
     October 11, 2005

SO ORDERED:

Sidney H. Stein, U.S.D.J.